1575. I'm sorry we have counsel in the courtroom. I thought we were remote. That's my mistake. Whenever you're ready. May I please the court counsel. I represent Jason Tyler Dominic Rodriguez. We've raised two issues relative to two counts of conviction. One is related to attempted enticement and one is related to attempted aggravated sexual abuse with travel of a child less than 12 years old. Relative to both arguments, they deal with sufficiency of the evidence in that there was no sufficient evidence as a matter of law by which a reasonable juror could find Mr. Rodriguez guilty. Relative to the attempted enticement, this is a third party intermediary sting. The court's just heard argument regarding I believe a very similar if not the exact same sting with the exact same officers in the exact same district. It was a Craigslist ad that was posted that Mr. Rodriguez responded to. He testified at trial that he was running his own sting. The jury rejected that, his testimony. However, the text messages and the conversations and his actions in this case relative to a third party intermediary do not support a conviction. This court's holding in McMillan said under the facts and circumstances of that particular case that third party intermediaries could support a charge of attempted enticement. The facts that are existent in McMillan do not exist here. The court has referred to as the third bucket of McMillan having to do with the defendant talking to or wanting to seek or wanting consent or wanting interaction with the fictitious minor. That doesn't exist here in this case. The conversations between Mr. Rodriguez and Agent Waynescott had to deal with mostly whether or not Agent Waynescott was real or not, whether the fictitious child was real or not, the course and conversations about sending pictures, sending things to justify whether or not this was a real thing or a fake thing. There's no indication under the facts of this case that would be similar to that of McMillan to fall into that third bucket where Mr. Rodriguez is seeking to get consent from the minor. It just doesn't exist in this case. The Hassler case has to deal with the defendant in that case was seeking the agent who was a mother in that case to say and show a dress to the purported minor. Did the daughter like the dress? All of those kind of things. Those facts don't exist here. Mr. Rodriguez did not engage in the conversation that would support a third bucket with McMillan. The argument we raised though to go back prior to McMillan has to do with just the plain language of this statute. The statute says whoever using an implement of interstate commerce attempts to persuade, induce, entice, coerce any individual not yet 18. That's just the language of the statute. Not yet 18. It's been this court and other courts' constructs to say you can induce, persuade, entice by exercising conversation with a parent who may have influence or all of these other things. But that's not the plain language of the statute. It's persuade, induce, entice someone who has not yet reached the age of 18, which didn't exist here. There are numerous cases before this court, there's more coming through, where the defendants in those cases in these stinks have had conversations with people that the FBI says are 15 years old or 16 years old. That would fall under an attempted enticement statute based on the plain language. But that's not the facts that we have here. There was no conversation with... And that if you don't choose to do that under the facts of this case, you can find that it doesn't fall into the third bucket. McMillan and this third party intermediary in this third bucket that the court has already adopted do not comport with the facts of this case. And McMillan is wrongly decided under this idea that there's some additional persuasion or experience that's outside of the plain language reading in the statute. As this court has just heard, there are numerous, numerous statutes, including Mr. Rodrigo's was charged under those, by which this conduct fits, that the government could charge under. There's not only one statute that this conduct falls under. The government elected to charge under this statute, and under the plain language reading of this statute, Mr. Rodrigo's conduct does not fit all of the elements, just under the plain language reading of it. There doesn't have to be an extension or a theory or a what if in order to find somebody guilty. It just has to be if you attempted to persuade, induce, entice, coerce any individual not yet 18. That's just all there is. The idea that people who go online to solicit sex with minors are unpopular or unlikable or should be punished, fine. But the government can do that in a number of ways. It has to, through its charging decisions, be consistent with what the plain language of the statute leaves, what it says, not yet 18. The government doesn't have to stretch to go any farther than to find a statute of which there are many to fit this conduct. Mr. Rodrigo's conduct under this particular statute does not fit, even with that third bucket of Macmillan. In the first and second buckets of Macmillan, under it, I would assert to the court, that's even getting farther afield, and that's even broader. And the court should not adopt those. That's getting farther and farther away from the plain language of the statute. By adopting only the third bucket in Macmillan, I would assert that this court was wrong to do that, but at least it was more closely adhering to the plain language of the statute. So why doesn't it adequately fit the statute on the fact pattern like here, where you have an offer of, you have a clear expression of interest in having sexual contact with a minor. You have an offer of money. You have a discussion about a gift that the child would like. And then the individual gets in the car, drives to the location, and has the gift with them. When you add all of that up, why can't you in the totality, mindful of the content of the text exchange, or the e-mails, conclude that the defendant took a substantial step? Because the defendant did not take a substantial step toward enticing, persuading any person under the age of 18. Yeah, okay. So let's do this. Within the confines of Macmillan, so assume Macmillan is circuit law, which it is, as you know. So within the confines of Macmillan, how does it not fit? Because he didn't ask for the agent to talk to the minor, bring back information, to have conversation with the minor, or like Hassler, to show the minor, put on the dress, or would the minor like the dress, and then get back to me about whether or not the minor would like the dress. There's no interaction between them. He says, I'd like to talk to her on the phone, if that's cool. What do we do with that? That was to verify that the minor was real. In the course of that conversation, he's going through with Agent Wayne Scott to figure out whether or not this is real or not real. And the conversation about talking to her on the phone and wanting pictures is to verify identity and legitimacy. Isn't that a substantial step toward the commission of the offense? No, because he's not going to talk to the minor to encourage, entice, persuade the minor to have sex with them. He wants to talk to the purported minor in order to say that this is a real person, not a fake figment of law enforcement. And that was in the whole context of the series of those chats, that's what it was worth. I had reserved three minutes for rebuttal. Yeah, you want to save the rest? Thank you. Yeah, very well. Good afternoon, Your Honors. Good afternoon. May I please have the court counsel? My name is Tom Leggans and I'm representing the United States here today and I was trial counsel below also on this case. My prepared comments for this afternoon are very brief and not at all nuanced. I think the evidence in this case really details a series of conversations between an undercover agent pretending to be the father of an eight-year-old girl who was willing to allow strangers to have sex with her. He gets into a conversation with the defendant and in the course of that conversation with regards to his intent on both of the counts at issue on this appeal, the evidence was that the agent told the defendant if you intend to have sex with my daughter, you need to show up with $150 and a bag of gummy bears to help persuade her. And it is our position that when the defendant showed up with those items, when the defendant shows up with the items he needed if he intended to conduct the sexual transaction with the minor, then that's all the jury needed to have to find intent in this case on both counts that are under attack in the defendant's appeal. Not only do you have the defendant then showing up driving for two hours from St. Louis, Missouri to Marion, Illinois to the prearranged meeting place where there had been discussions about the fact that sex with the minor would follow the meeting, the defendant shows up with $152. Does the crossing of the state lines alone satisfy the interstate commerce? Yes, I believe so. I mean these are all Man Act derivative, well the travel with intent to have sex are all Man Act derivative type statutes and crossing the state line with the intent to have sex does satisfy the interstate commerce. So you don't need any aspect of the interstate commerce dimension of text message or? You do on the enticement count. I thought you were asking. Yeah, I'm asking 2422B. Yeah, on the enticement count you do need an instrumentality of interstate commerce and you know the text, our theory at trial was that. Would the travel, on 2422B alone, not the travel statute, 2422B, would the traveling across the state lines with that intent against the backdrop of the prior exchange satisfy the interstate commerce dimension? I think it would. I mean I really hadn't prepared that question. You know there are, the Lopez Supreme Court decision identified what various phrases within a statute mean in terms of what you have to show with regard to the interstate commerce element in that statute and as I stand here off the top of my head, I can't remember whether it's in or affecting interstate commerce or whether it's in interstate commerce. I do know that our jurisdictional hook on this case and on the enticement count was it also included a computer, by computer. But generally traveling in interstate commerce where there's an interstate commerce element will satisfy pretty much any interstate commerce element under Lopez, I believe. The Supreme Court case that interpreted the interstate commerce clause several years back. Yeah, I mean it's a little bit different. I mean that's for purposes of Congress's, the scope of Congress's Article I authority under the commerce clause. Here you're talking about the sufficiency of evidence in a criminal case. Yeah, I think it would. I don't think in this case, I mean we have to hang, obviously we don't have to hang our hat on that. I mean we, the interstate commerce, the sufficiency of the interstate commerce element wasn't even seriously disputed at trial. I think the main argument at trial. Was it disputed at all? No, not at all. The argument, the whole argument at trial, I mean my closing argument was there's really no issue here other than do you believe the defendant was up to good or do you believe he was up to no good. The argument at trial was over his intent just as the argument here today is over his intent. Well no, you had to have the jurisdictional hook for the jury for your interstate commerce on this enticement count. Correct. So what did you explain to the jury? Because you weren't talking about travel across straight lines for interstate commerce. For the enticement count, we said the use of a computer. But what did you point to him on the computer doing that was persuading? His cell phone. Under the jurisdiction, or under the decisions of this court, a smart phone, a cell phone constitutes a computer and an instrument. Was there a stipulation or what was the evidence? Did you have somebody testify from a phone company or was there an evidentiary stipulation or what was it? Yes, that he, well there was an instruction that a cell phone connected to the internet is an instrumentality of interstate commerce. And there was really no dispute that he was using a cell phone connected to the internet in the course of pretty much most of the discussions contained in Government's Exhibit 43. So that was a jurisdictional hook on the enticement count was, and there really was, as I said, there really was no dispute. On the issue of his intent, as I said, that was a whole issue that was litigated in front of the jury below and it was, he told the case agent, told the defendant, if you intend to have sex with my 8-year-old daughter, you need to show up with $150 and a bag of gummy bears. And he showed up with both. And not only that, but he also showed up with a cell phone that was full of child pornography images and videos, which underlined, or which undermined his defense that he was out on some hero mission. It evinced his sexual interest in children. And the jury quickly rejected the defendant's arguments on intent. I also believe there are other, during my closing argument, and I really hit the fact that his intent could be inferred from the fact that he showed up with $152 when the defendant was told that's what he would need to persuade, induce, entice the 8-year-old girl into having sex with him. But we had all of the other Hosler and McMillan factors at play in this case and I would differ with counsel. One thing she said, there was a discussion near the end, I believe it's contained in Government's Exhibit 43, where the defendant tells the ostensible father, the case agent in this case, tell her about me and get back to me and let me know what she says. So you have not only the direct evidence from the gummy bears, from the $150, but all of the McMillan and Hosler factors at play in this case and it's the government's position that there is an abundant amount of evidence that is sufficient to sustain his intent to commit these offenses. And if the court has no further questions, I'll yield the rest of my time. Okay, very well. Thank you, Your Honor. Thank you. If crossing state lines in this instance would be sufficient to sustain a conviction for enticement, then there's a double jeopardy problem. They have to be separate if it's also convicted of crossing state lines with the intent to have sex with someone under 12. So attempted enticement is a different statute from that. It uses a facility of interstate commerce, not just affecting interstate commerce. There's also discussion in law out there about how it's the asking, it's the enticement. Please meet me at Walmart, I will sell you my truck for $100 to get the person to show up at the Walmart. That there has to be two conduct, otherwise there's a double jeopardy problem for the conviction of both. If this court feels that exactly the same elements meet each statute, then one of the convictions would need to be vacated for double jeopardy because it's exactly the same conduct. They have to include elements that the other does not. We had a lot of litigation below about the double jeopardy issue. And so I think that that underlines my point that this attempted enticement statute is different. It has to be different than this crossing state lines in order to have sex. And that has to do with the asking of the minor, the purported minor. The enticement persuasion that the ask has to come directly to any person under the age of 18. And that's what makes it a different crime. The conversation that the government refers to about, tell me what she says, is after the ask and after the agreement has already been made. That is at the very end, after they've already agreed on a meeting place, they've agreed on a price, that they've agreed on all of those kind of things. So that was not related to any inducement to persuade or entice the purported minor. The attempted enticement statute, as has been litigated in this district, you can go back to 2008 in a case called Gladish, G-L-A-D-I-S-H, where this court said you can't just arrest people essentially for them making conversation and never showing up. There has to be more. And so it's the course of that that encouraged law enforcement to go out and now only arrest the people that show up at the meet location. There haven't been a lot of cases where they're just arresting the people at home. And that was because of the language that this court used in Gladish. So true with McMillan. In the McMillan case, and recently decided the York case, when this court has said, we're going to pour things into this third bucket, right, that if you have conversation with the agent that is through the third party intermediary and it meets these specific things, that's how law enforcement has tailored their investigations. The agents almost go through a checklist of, I'm going to say this and get them to say this and this, and then we're going to meet the definition as established essentially by this court in McMillan. That should not be the way. It should be the language of the statute that these cases where the purported minor is 15 or 16 years old do meet the definition of attempted enticement of a minor because they're communicating directly with the person under the age of 18. These factual situations where you're using a third language of the statute. Okay. Thanks to both counsel very much. We appreciate it. We'll take the case under advisement. That concludes this morning's